## UNITED STATES

### v.

### Robert A. PEARSON, 190 46 7075, Corporal (E–4), U. S. Marine Corps.

### NMCM 81 1258.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 Dec. 1980.

Decided 30 June 1982.

CAPT E. A. Burnette, USMC, Appellate Defense Counsel.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and MALONE, JJ.

GLADIS, Senior Judge:

Charged with unpremeditated murder, the accused was convicted, contrary to his pleas, by a general court-martial composed of officer and enlisted members of negligent homicide and sentenced to a bad-conduct discharge, confinement at hard labor for one year, total forfeitures, and reduction to pay grade E–1. The accused assigns ten errors. We find merit in none, but discuss several assignments.

## II

THE MILITARY JUDGE ERRED BY DENYING THE APPELLANT'S REQUEST FOR THE EMPLOYMENT OF AN EXPERT BECAUSE (A) SECTION 3006A(e) OF THE CRIMINAL JUSTICE ACT 18 U.S.C. § 3006A(e) APPLIES TO PERSONS IN THE MILITARY (B) UNDER THE CIRCUMSTANCES, EMPLOYMENT OF AN EXPERT WAS CONSTITUTIONALLY MANDATED, AND (C) THE APPELLANT IS ENTITLED TO EXPERT ASSISTANCE PURSUANT TO MILITARY LAW.

■ At trial the accused renewed pretrial motions for investigative and expert assistance. He desired an investigation into the background of the victim and the testimony of a trauma expert and an anthropologist, whom he characterized as an accident reconstruction expert.

The Court of Military Appeals has held that the provisions of 18 U.S.C. § 3006A(e) have no application in military law. *United States v. Johnson*, 22 U.S.C.M.A. 424, 47 C.M.R. 402 (1973). This Court has held that investigative assistance is not constitutionally mandated. *United States v. Gaines*, No. 80 0413 (NMCMR 30 November 1981) (unpublished); *United States v. Drouin*, No. 78 0319 (NCMR 21 January 1981) (unpublished). Mil.R.Evid. (MRE) 706 provides that the defense counsel has an equal opportunity to obtain expert witnesses under Article 46, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 846. Under the circumstances of this case the accused has not been prejudiced by denial of his requests. We are convinced that the assistance and testimony sought would not have affected the outcome of the trial. *See State v. Tatum*, 291 N.C. 73, 229 S.E.2d 562 (1976).

## IV

THE MILITARY JUDGE ERRED IN DENYING COUNSEL THE OPPORTUNITY TO *VOIR DIRE* THE MEMBERS.

The accused contends that the military judge erred by refusing to allow the defense to conduct *voir dire* and to ask questions proposed by the defense. *United States v. Slubowski*, 7 M.J. 461 (C.M.A. 1979), authorizes the judge alone to conduct *voir dire* if he allows counsel to submit additional questions. Defense counsel submitted numerous questions for *voir dire* before the judge conducted the inquiry. Although the judge did not ask all of these questions, after completing his inquiry, he afforded counsel the opportunity to suggest specific areas of additional inquiry. Defense counsel declined to do so, but merely reiterated his request that the judge ask all the questions previously submitted, even though the judge had covered many of these areas in his inquiry. (R. 126.) We cannot distinguish the instant case from *Slubowski* and reject the assignment of error.

## VI

THE MILITARY JUDGE ERRED IN ALLOWING SGT. DURAN, SGT. GREEN, GYST. LOCKE, AND MR. LEROY TO TESTIFY IN THE PROSECUTION CASE IN REBUTTAL.

The accused contends that the receipt of evidence of the victim's character for peacefulness was error because the evidence established the victim was the aggressor. The victim was talking to a young lady at the enlisted club who, according to her testimony, was holding his arm and had her hand around his waist. The accused testified to the following. He approached her, placed his hand on her, and whispered to her "If I told you you had beautiful eyes, would you be my lover?" She said, "No"; the victim told the accused that she was his girl; the accused replied, "No, it's (sic) not." The victim shoved him against a table. The victim took a step and the accused did not know what happened to the victim after that. The accused was hit in the jaw. He does not know who hit him. He stumbled back into a chair and saw three or four people coming in his direction, and threw the chair at the group of people, turned around and walked away. The evidence establishes that the victim pushed the accused and was afterwards struck by the chair in the head with the fatal blow. There was evidence that the victim turned away from the accused after he pushed him, that the accused picked up and swung the chair like a baseball bat striking the victim in the side of the head, and that the accused was not struck in the jaw by anyone before he swung the chair. Thus there was evidence that, although the victim was the initial aggressor, he turned aside. The testimony of the accused raised a permissible inference that the victim did not turn aside but advanced on the accused after he pushed him. Thus, evidence of the victim's character for peacefulness was relevant. MRE 404. The military judge did not abuse his discretion in admitting it.

## VII

THE EVIDENCE WAS INSUFFICIENT TO CONVICT APPELLANT OF NEGLIGENT HOMICIDE BEYOND A REASONABLE DOUBT.

Recognizing, as we must, that the triers of fact saw and heard the witnesses, we are convinced beyond a reasonable doubt that the evidence was sufficient to establish the accused's guilt of negligent homicide.

## VIII

THE MILITARY JUDGE ERRED BY ALLOWING GYSGT LOCKE AND MR. LEROY TO TESTIFY IN AGGRAVATION.

Defense counsel argued at an Article 39(a) session that during sentencing proceedings in a not guilty plea case the Government cannot introduce evidence of aggravating circumstances. Defense counsel also objected because the probative value of the evidence about to be elicited was tenuous and outweighed by its potential prejudice. Trial counsel stated that GYSGT Locke would testify as to the impact of the death of the victim on his squadron and Mr. Leroy, the victim's father,

would testify as to the impact on his family and community. The judge cautioned against eliciting acts of uncharged misconduct, but overruled the objections.

After eliciting GYSGT Locke's laudatory opinion of the victim as a Marine, trial counsel asked what the impact of the victim's death on his squadron had been. Locke answered that the squadron had been shaken up, could not understand how the tragedy had occurred in the senseless way it did, and was waiting to find out the verdict of the court and how the victim's killer would be treated. Defense counsel did not object to the answer.

Mr. Leroy testified that the victim was a perfect son and that the accused would never know what he had taken away from them. When asked by trial counsel what the impact of his son's death was on his community in Wisconsin, Mr. Leroy answered that the word "devastating" could not describe it and that he did not know how he could go back home and tell them that the verdict was negligent homicide. The military judge immediately recessed the court and at an Article 39(a) session rebuked Mr. Leroy for criticizing the verdict of the court. When the members returned, the military judge gave no instruction to disregard any portions of the testimony. Defense counsel requested none.

■ Paragraph 75*b*(3), *Manual for Courts-Martial, 1969 (Rev.)* (MCM), provides that in guilty plea cases admissible evidence as to any aggravating circumstances not introduced before findings may be introduced after findings. Such evidence may also be introduced after findings in cases in which the accused had pleaded not guilty, but been found guilty if relevant and admissible as appropriate matter to aid the court in determining the kind and amount of punishment to be imposed. *United States v. Vickers*, 10 M.J. 839 (N.C.M.R. 1981). Evidence of the status of, or other information about, the victim may be relevant to the nature of the crime and aggravate it. The sentencers cannot be invited to place themselves in the shoes of the victim or his close relatives. *United States*

*v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969). But the risk of engendering their sympathy for the victim does not warrant excluding testimony about or by the victim. Thus the Government may show that a rape or assault victim was of tender or advanced age or slight physique in comparison with the accused. Evidence of the effect of a crime is admissible. The victim may be called to testify as to the nature and extent of his injuries. It is not necessary that the accused be aware of all the aggravating circumstances at the time of the crime. *Cf. United States v. Corl*, 6 M.J. 914 (N.C.M.R. 1979) (evidence of psychological and physiological effects of phencyclidine on users is admissible in aggravation of sale and transfer offenses).

■ Applying these principles, we conclude that evidence of the impact of a crime on the community is admissible in aggravation. The impact is an effect of the crime which may properly be considered in arriving at an appropriate sentence. Evidence of the character of the victim may be admissible if it assists the sentencer in assessing the loss, the impact, and the effect of the crime.

■ We recognize as did the trial judge that the criticism of the court's findings was improper. The testimony that the victim's squadron could not understand how the tragedy had occurred in the senseless way that it did and was waiting to find out the verdict and how his killer would be treated was also improper because of the risk that the members might be influenced to adjudge a more severe sentence than appropriate in order to satisfy the local community. *See United States v. Boberg*, 17 U.S.C.M.A. 401, 38 C.M.R. 199 (1968); *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959). Although society has an interest in knowing that a particular sentence is just in order that its members may have trust and confidence in our system of justice, an individual may not be punished more severely than he justly deserves in order to enhance the community's perception of the sentence as just. Each accused must be given individualized con-

sideration. *United States v. Ruggiero*, 1 M.J. 1089, 1102 (N.C.M.R.1977).

█ The military judge did not abuse his discretion when he initially ruled that the witnesses could testify as to the impact of the victim's death on the community. When improper testimony was subsequently elicited, defense counsel waived the error by failing to object specifically or request an instruction to disregard. MRE 103. We are satisfied that defense counsel were convinced that the improper testimony had little effect on the members. Otherwise they would have requested a limiting instruction after the judge had admonished the victim's father.

### IX

THE CONVENING AUTHORITY ABUSED HIS DISCRETION IN DENYING APPELLANT'S REQUEST FOR DEFERMENT OF SENTENCE TO CONFINEMENT.

█ In its decision on the accused's petition for extraordinary relief, the Court of Military Appeals indicated that the convening authority's denial of the request for deferment may have been based on improper considerations. It denied the petition without prejudice to the accused's right to submit another application for evaluation by the convening authority in the light of proper principles. *Pearson v. Cox*, 10 M.J. 317 (C.M.A.1981). The accused now challenges denial of the original application on different grounds than addressed by the Court of Military Appeals. Appellate defense counsel is unable to tell us whether another application was submitted to the convening authority after denial of his petition by the Court of Military Appeals. Under the circumstances we decline to grant relief. *Cf. United States v. Hagler*, 7 M.J. 944, 952 (N.C.M.R.1979). The issue is now moot because the confinement portion of the accused's sentence has been served. *United States v. Brownd*, 6 M.J. 338 (C.M.A. 1979).

The remaining assignments of error and the issues raised by trial defense counsel in his response to the staff judge advocate's review and statement attached to the accused's request for appellate representation also lack merit.

█ We shall reduce the forfeitures to conform to the policy that any accused who is not serving confinement shall not be deprived of more than two-thirds of his pay.[1] Paragraph 88*b*, MCM. Accordingly, the findings of guilty, and only so much of the sentence as approved on review below as provides for a bad-conduct discharge, confinement at hard labor for one year, total forfeitures for 9 months, and forfeiture of $508.00 per month for 6 months, and reduction to pay grade E–1 are affirmed.

Judge BYRNE and Judge MALONE concur.

MALONE, Judge (concurring/dissenting):

Whereas I concur in the majority's affirmance of the findings, I cannot join in that portion of their decision regarding the inapplicability of 18 U.S.C. § 3006A(e) to military courts or the lack of a constitutional mandate for investigative assistance. See Assignment of Error II.

In summarily disposing of the question of the application of 18 U.S.C. § 3006A(e) in military law, the Court of Military Appeals in *United States v. Johnson*, 22 U.S.C.M.A. 424, 47 C.M.R. 402 (1973), merely cited for its authority its *per curiam* decision in *Hutson v. United States*, 19 U.S.C.M.A. 437, 42 C.M.R. 39 (1970). However, Private Hutson was denied requested extraordinary relief by the Court of Military Appeals due to the failure of that Court to find a basis for such relief in the All Writs Act, 28 U.S.C. § 1651. Its statement in dictum regarding 18 U.S.C. § 3006A(e) apparently flowed from a concession by the defense in that case that 18 U.S.C. § 3006A(e) provided relief only in United States district courts.

---

1. Forfeitures were not applied until the date of the convening authority's action, 3 months after the sentence was adjudged.

My reading of its legislative history and pertinent legal publications does not provide me a similar conclusion. *See e.g.,* Kutak, *The Criminal Justice Act of 1964,* 44 Neb.L.Rev. 703 (1965).

Under the circumstances of this case, however, appellant has suffered no prejudice from either the failure of Doctors Ellsworth and Schaefer to testify in his behalf or for the defense not to have been provided investigative assistance regarding the question of the victim's character trait for peacefulness. Whatever the results of their investigation and nature of their testimony, appellant could conceivably have expected no better a result at trial than has already resulted in his conviction of the lesser included offense of negligent homicide.

Further, appellant's testimony did not convince me that by virtue of his receipt of a corporal's pay he was thereby unequivocally qualified for assistance under the terms of 18 U.S.C. § 3006A(e).

Finally, I see no reason to provide appellant additional sentence mitigation other than that already suggested by the policy of paragraph 88*b,* MCM. I would not cap the partial forfeitures by limiting them to the six months following appellant's release from confinement. *See United States v. Czerwonky,* 32 C.M.R. 676 (N.B.R.1962).