UNITED STATES, Appellant

v

TIMOTHY K. REHM, Private First Class,
U. S. Marine Corps, Appellee

19 USCMA 559, 42 CMR 161

No. 22,814

July 10, 1970

*Captain John J. Reilly*, USMCR, argued the cause for Appellant, United States. With him on the brief was *Lieutenant Colonel Charles J. Keever*, USMC.

*Lieutenant Martin A. Selzer*, JAGC, USNR, argued the cause for Appellee, Accused.

## Opinion of the Court

DARDEN, Judge:

In accordance with Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Judge Advocate General of the Navy has certified to this Court for review, "Whether the marihuana obtained from the accused was properly admitted into evidence."

Pleading guilty to absence without leave but not guilty to the unlawful possession of marihuana, the accused was convicted by a special court-martial of both offenses and sentenced to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $75.00 per month for the

same period, and reduction to the pay grade of E–1. A Court of Military Review set aside the finding of guilty as to the marihuana offense and reduced the period of confinement and forfeitures to one month.

The marihuana that formed the basis for the possession charge was found in a 3- by 5-inch manila envelope taken from Rehm by Sergeant McCarthy, USMC, on December 2, 1968. The Sergeant testified that on the morning in question he entered a squad bay for the sole purpose of "bringing the troops into the classroom." As he walked down the bay, he noted the accused sitting on his "rack," and the accused "made a movement with his hands pulling quickly to the side as thought [sic] he was trying to hide something from me." At the same time, Rehm commented, "you have caught me now." His curiosity aroused by this turn of events, McCarthy raised his arm and said, "give me the envelope." The accused responded by handing it over. The envelope was later found to contain 1.85 grams of marihuana.

On cross-examination the Sergeant augmented his previous testimony with the following answers:

"Q. Did you ask the accused what he had in his hand?
"A. Yes, sir I did.

"Q. Before the defendant [sic] handed over what was alleged to be marijuana did he say anything that caused you to be suspicious of him?
"A. Yes, sir. My suspicion was aroused when he began talking about, actually what I didn't know was he was talking about what he had in his hand, then after carrying out the story it started to get clearer to me as to what he had.

"Q. Exactly when did you ask his [sic] what he had in his hand?
"A. It was around the time when I asked him to hand the envelope over to me.

"Q. Did you ask him anything before that?

"A. I think I did ask him, 'what was it' before he give [sic] it to me, I don't recall exactly what order it came in, and possibly a few other questions during the conversation which was going back and forth.

"Q. How long would you say it was from the time you first became suspicious of the accused and actually coming into possession of the alleged bag of marijuana?
"A. A rough guess sir, about five minutes would be the maximum.

"Q. Do you recall, by any chance, the exact words you used when you asked the accused to hand over the bag of marijuana.
"A. I didn't ask the accused actually to please give it to me in this form, I said, 'give me the bag', not in a demanding way, but a statement.

"Q. What did the accused do when you asked him this, 'give me the bag'?
"A. He handed it over to me.

"Q. Did you give the accused an Article 31 warning?
"A. No, sir I didn't."

Counsel for the accused regarded the passing of the envelope as an incriminating statement that was inadmissible in evidence unless an earlier Article 31 warning could be shown. See United States v Nowling, 9 USCMA 100, 25 CMR 362 (1958).

At the Court of Military Review level, appellate defense counsel argued —as he did before this Court—that the envelope was seized without probable cause and that Rehm was required to surrender it without having first been given the benefit of an Article 31 warning. The Court of Military Review, unable to distinguish this case from United States v Corson, 18 USCMA 34, 39 CMR 34 (1968), agreed, and took the action referred to above.

In *Corson*, Chief Petty Officer La-Fave, who was in charge of a rock crusher installation located twenty miles from the main camp, was told to check any information he received regarding the use of marihuana at the

site of the rock crusher. On his return to the latter site he questioned several people. That same evening he was informed by a person named Page that Page had purchased in Corson's behalf ten hand-rolled Vietnamese cigarettes from a Vietnamese woman for $5.00. Since stateside cigarettes were then priced at roughly twenty cents per package, LaFave believed the ten cigarettes were something out of the ordinary. Finding Corson in a bunker, LaFave ordered him out, saying, " 'I think that you know what I want, give it to me.' " United States v Corson, supra, at page 35. Corson reached into his pocket, pulled out the cigarettes, and handed them to LaFave. They were found to contain marihuana. Corson was later tried and convicted on a wrongful possession charge, the cigarettes having been admitted into evidence over defense objection that an earlier Article 31 warning was a prerequisite. On appeal, this Court agreed with the contention of trial defense counsel and affirmed a board of review decision that ordered the charge dismissed.

Before this Court, counsel for the Government assert that probable cause is present, since "the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed" (United States v Ness, 13 USCMA 18, 23, 32 CMR 18 (1962)); that the senior noncommissioned officer present was authorized to seize the marihuana, because "the circumstances required immediate action"; and that there was no requirement that the appellee be warned of his rights under Article 31, Uniform Code of Military Justice. They would distinguish Corson on the basis that the marihuana Corson removed from a shirt pocket had testimonial value because it evidenced conscious possession of marihuana and knowledge that such possession was wrongful. Corson's act was said to provide LaFave with essential information regarding the location of the contraband. Continuing the argument, counsel maintain that in the case at hand no information was supplied by Rehm's response to Sergeant McCarthy, as the envelope containing marihuana was already in view and McCarthy had decided to seize it.

Evidence obtained as the consequence of a lawful search is admissible in evidence even though an accused is not first advised of his Article 31 rights. United States v Coakley, 18 USCMA 511, 40 CMR 223 (1969); United States v Rushing, 17 USCMA 298, 38 CMR 96 (1967); United States v Cuthbert, 11 USCMA 272, 29 CMR 88 (1960). Reasonableness of a seizure, like that of a search, depends upon the existence or nonexistence of probable cause. United States v Thomas, 16 USCMA 306, 36 CMR 462 (1966). Counsel for the Government succinctly note, however, that the fine "line of cleavage between actions and statements is one that must be drawn in the light of substance rather than form."

The Corson opinion includes a commentary on search and seizure. Nonetheless, that case ultimately held that the facts and circumstances depicted not a seizure but rather a confrontation between Corson and Chief LaFave of a nature requiring an Article 31 warning. If the Court had decided Corson on a seizure basis, admissibility of the offered exhibit would have depended solely on the existence of probable cause without regard to Article 31 requirements.

In any event, we view the case at hand in the same way. Sergeant McCarthy entered the squad bay with an objective unrelated to an offense. After Rehm's conduct made him suspicious, McCarthy became an inquisitor, asking questions to substantiate his belief that the envelope Rehm held contained marihuana. We find that Article 31 requirements were as essential to this encounter as to the one

that took place in *Corson*. We believe McCarthy's acquisition of the marihuana resulted from what was essentially an interrogation, not a seizure. Accordingly, the certified issue is answered in the negative. The decision of the Court of Military Review is affirmed.

Judge FERGUSON concurs.

Chief Judge QUINN concurs in the result.